776 So.2d 443 (2001)
STATE of Louisiana,
v.
Eddie GIVENS.
No. 99-K-3518.
Supreme Court of Louisiana.
January 17, 2001.
*446 Clive Adrian Stafford Smith, New Orleans, for Applicant.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Julie C. Tizzard, for Respondent.
Timothy A. Meche, for Amicus Curiae Association of Criminal Defense Attorney.
KIMBALL, J.
A twelve-person jury convicted Eddie Givens of two counts of aggravated rape, one count of aggravated burglary, one count of armed robbery, one count of simple burglary, and one count of attempted simple burglary on May 30, 1997. The trial court sentenced the defendant as follows: (1) life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on counts 1 and 4; (2) twelve years imprisonment at hard labor with the first year to be served without benefit of parole, probation, or suspension of sentence on count 2; (3) three and one-half years imprisonment at hard labor on count 3; (4) thirty years imprisonment at hard labor on count 5; (5) ninety-nine years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count 6; and (6) the sentences on counts 1, 2, and 3 were to run concurrently with each other and the sentences on counts 4, 5, and 6 were to run concurrently with each other and consecutively to the sentences on counts 1, 2, and 3. One of the defendant's arguments on appeal is that the prosecutor impermissibly exercised peremptory challenges to strike potential male jurors solely on the basis of gender in violation of J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). After reviewing the record, we find that the trial court erred by not more specifically addressing the defendant's J.E.B. challenges and by not requiring the prosecutor to give gender-neutral reasons for her use of peremptory strikes. Because none of the defendant's other arguments constitute reversible error, the defendant's conviction and sentence are affirmed in part, and the case is remanded in part for further proceedings with respect to the J.E.B. issue.[1]

*447 Facts and Procedural History

The defendant was initially charged by grand jury indictment with two counts of aggravated rape (counts 1 and 4), two counts of aggravated burglary (counts 2 and 5), and two counts of armed robbery (counts 3 and 6). The charges resulted from two separate burglaries involving the rape and robbery of two victims, D.K. and P.A.[2]
The first burglary and rape occurred on the night of June 22, 1993, at D.K.'s home on Octavia Street. D.K. testified that she went to bed that night at around 9:15 p.m. and was later awakened when the overhead light in her room came on and two men entered her room. The older man, who was armed with an ice pick, hit her on the arm, ordered her out of the bed, and demanded money. The younger man removed thirty dollars in cash from D.K.'s purse and then left the room. The older man then tied D.K.'s arms behind her back with the cord from her telephone. He threw her against a day bed in the room, tied a red handkerchief around her mouth, hit her on the back of the head, and raped her. D.K. testified that she saw the two men take a gold watch, a Rex pin, a monogrammed pin, earrings, a combination TV/ VCR, a stereo, a boom box, and another small television from her home. They put the things in her white Taurus station wagon and left.
D.K. called the police at 11:35 p.m., and they located her car shortly after midnight with two men inside it. One man escaped from the car and hid under a house. The police detained the other man in the car, Earl Patterson, who identified the second man as Bryan Morgan. D.K. was taken to the scene, but stated that Earl Patterson was not one of the intruders. She was then shown a photographic lineup containing the picture of the second man, Bryan Morgan, and she did not identify him as one of the intruders. She was shown another photographic lineup with the defendant's picture in it, and she identified him as the man who raped her.
On June 27, 1993, at approximately 1:45 a.m., police officers were called to the 8400 block of Freret Street, where P.A. told them that two men had broken into her home and that the older of the two had raped her. She testified that she had fallen asleep on the sofa in her living room and that she was awakened by the living room light coming on. She awoke to find a man pointing a gun at her and telling her to get up. He took the diamond ring off her finger and took her into the kitchen where a younger male was looking around. The younger man took a boom box off the kitchen counter and headed towards the laundry room where the back door was located. The older man then hit her on the temple with the gun and ordered her to remove her pants. He ordered her to face the wall, and he raped her. She chose the defendant's picture out of a photographic lineup, and she testified that she had seen him earlier that day near her home.
Following trial, a twelve-member jury found the defendant guilty as charged on counts 1, 4, 5, and 6; guilty of simple burglary of an inhabited dwelling on count 2; and, guilty of attempted simple robbery on count 3. The trial court denied the defendant's motion for a new trial on June 16, 1997, and sentenced the defendant on June 16, 1997. The defendant appealed his conviction and sentence to the Fourth Circuit Court of Appeal, arguing five assignments of error. The Fourth Circuit affirmed his conviction and sentence.
The defendant applied for a writ of certiorari to this court based on the same five assignments of error. He argues that (1) he was deprived of his constitutional right to counsel of his choice; (2) he was deprived of his right to a fair trial when the prosecutor impermissibly struck potential jurors based on their gender; (3) the trial *448 court committed reversible error by not granting a mistrial when a witness testified to crimes not admissible at trial; (4) that the District Attorney's Office should have been disqualified; and (5) that the prosecution should not have been permitted to refuse to enter into a plea agreement with the defendant. After a careful review of all of the defendant's assignments of error, we find that the defendant is entitled to some relief only on his claim of gender discrimination in the juror selection process.

Law and Discussion

A. J.E.B. Claims[3]
In the defendant's only meritorious assignment of error, he asserts that the state impermissibly struck potential male jurors because of their gender. Specifically, he argues that the district attorney's use of peremptory challenges to strike all but one man from the jury clearly established a prima facie case of gender discrimination and that the trial court erred by not requiring the district attorney to give gender-neutral reasons for the use of those challenges.
In Batson v. Kentucky, 476 U.S. 79, 88-89, 106 S.Ct. 1712, 1718-19, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause forbids the use of peremptory strikes to challenge potential jurors solely on account of their race or the assumption that members of a certain race will be unable to impartially consider the case before them. The Court concluded that such discriminatory practices in the use of peremptory challenges denies a defendant equal protection of the law and unconstitutionally discriminates against the potential juror in violation of the Fourteenth Amendment. Id. at 84-89, 106 S.Ct. at 1716-19. In J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended its holding in Batson and instructed that the Equal Protection Clause also prohibits discrimination in jury selection on the basis of gender. The Court found that the same reasoning it had employed in Batson to determine that racial discrimination in the exercise of peremptory challenges violates the Fourteenth Amendment's promise of equality under the law and the equal right to participate in our democratic process naturally extended to the context of gender discrimination in juror selection. Id. at 140-42, 114 S.Ct. at 1427-28. In conclusion, the Court in J.E.B. stated that "[f]ailing to provide jurors the same protection against gender discrimination as race discrimination could frustrate the purpose of Batson itself." Id. at 145, 114 S.Ct. at 1430.
The Supreme Court has established a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner that violates the Equal Protection Clause. See Batson, supra; Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). First, the party challenging the peremptory strike must make a prima facie showing of discrimination in the use of the strike. If a prima facie case is established, the burden shifts to the opposing party to articulate a gender-or race-neutral explanation for the strike. Then, the trial court must determine whether the party challenging the strike has carried the ultimate burden of proving purposeful discrimination. See Batson, 476 U.S. at 93-95, 106 S.Ct. at 1721-22; Hernandez, 500 U.S. at 358-59, 111 S.Ct. at 1865-66.
*449 The combination of factors needed to establish a prima facie case are: (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause; and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of that cognizable group. Batson, 476 U.S. at 96, 106 S.Ct. at 1723. The Batson Court also noted that relevant facts or circumstantial evidence of discriminatory intent include proof of disparate impact and a "pattern" of strikes against jurors, as well as questions and statements made during voir dire. Id. at 96-97, 106 S.Ct. at 1723.
In State v. Green, 94-0887, p. 25 (La.5/22/95), 655 So.2d 272, 288, this court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. The court went on to outline several factors that could lead to a finding that a prima facie case has been made pursuant to Batson and J.E.B.:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
Id. If the defendant fails to make out a prima facie case, then the challenge fails, and it is not necessary for the prosecutor to articulate neutral explanations for the strikes. Id. at 287-88.
The focus in this case, then, is whether the defendant presented a prima facie case of gender discrimination by the prosecutor in her exercise of peremptory challenges to strike all but one male from the jury, thereby requiring the prosecutor to articulate gender-neutral explanations for the strikes. Initially, it must be noted that the record does not contain a full transcript of voir dire. However, it does contain the defendant's objections to the prosecutor's allegedly discriminatory strikes and reflects the prosecutor's pattern of striking male jurors. The record reveals that in the first group of jurors, defense counsel exercised a cause challenge against a male juror who favored the death penalty for rape. The trial court denied the challenge, and the defense used a peremptory challenge to remove the potential juror. The next prospective juror, Mr. Harris, was first accepted by the prosecutor and then the defense. However, the prosecutor suddenly changed her mind and back-struck Mr. Harris from the panel, leaving five female jurors.
In the next group of jurors, the prosecutor exercised a peremptory challenge against another male juror, Mr. Wilfred. The next male juror, Mr. Sylve, was accepted by the prosecutor and then by the defense. Again, after the defense accepted him, the prosecutor struck him from the panel. At that point, the defendant lodged his first objection pursuant to J.E.B., based on the prosecutor's exclusion of three potential male jurors and the fact that, thus far, the jury was made up of six females. The district attorney countered that she had accepted one male, but the defense had struck him.[4] The trial court denied the defense's challenge without discussion.
Immediately thereafter, the prosecutor struck another potential male juror. Defense counsel reurged his challenge and offered "to do the surrumold fiscious hypo *450 geometric distribution" (spelled phonetically).[5] The trial court again denied the challenge without discussion, apparently ignoring defense counsel's attempt to prove his claim statistically. Subsequently, the prosecutor and defense counsel accepted one male juror, Mr. Bundy, and then the prosecutor struck its fifth male juror peremptorily. Defense counsel, once again, objected on J.E.B. grounds, and the prosecutor argued that she had accepted a male juror, Mr. Bundy. The trial court overruled the objection. The prosecutor and the defense accepted another male juror, Mr. Jones. After the defense then backstruck Mr. Bundy, the prosecutor used a back-strike to remove Mr. Jones. The following exchange occurred:
Defense: Your honor, I object to that. That's the last remaining male on the panel, I believe.
State: I accepted Mr. Bundy and Mr. Smith back-struck him. I am now back-striking Mr. Jones.
Defense: Which leaves an all female jury. The defense would re-urge its objection.
Court: The Batson [J.E.B.] challenge is denied.
The empaneled jury consisted of one man and eleven women. One of the two alternates was also a man. The limited record reveals that, in all, the defense struck nine women and two men and the prosecutor struck seven women and six men. The trial court never required the prosecutor to provide reasons for any of the peremptory challenges it exercised against potential male jurors. Nor did the trial court articulate its reasons for denying the defendant's J.E.B. challenges. Therefore, we can only presume that the trial court did not find that the defense had established a prima facie case of discrimination. However, because the trial court did not explain its decision, there is no way for us to review its reasoning.
This court recently addressed the same problem in the context of Batson challenges in State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498, where we discussed the necessity for the trial judge to address these challenges when made by the defendant. In that case, the court explained that:
[T]he issue of purposeful ... discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole. The trial judge observes first-hand the demeanor of the attorneys and venire persons, the nuances of questions asked, the ... composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record. Thus, when a Batson challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring raceneutral reasons for the strikes.
Id. at 502 (citing Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866). Much like the present case, in Myers, the trial judge failed to address the question of whether the pattern of strikes by the prosecutor was enough to establish a prima facie showing of discriminatory intent. In that case, the final jury was composed of eleven Caucasians and one African-American, and there were no obvious reasons for the state's peremptory challenges apart from race. Id. at 502-03. This court found that the trial judge failed to make the necessary observations and rulings that are integral to a review of a Batson challenge. Id. at 503. The court reversed the defendant's *451 conviction in that case and ordered a new trial, because it was impossible to remand for a meaningful hearing on the issue of the defendant's prima facie showing of discrimination during voir dire as the trial judge had since passed away. Id.
Similar to Myers, there is no obvious reason for the prosecutor's strikes in this case other than gender. The defendant has presented enough evidence to establish a prima facie case of purposeful discrimination based on the fact that the prosecutor struck six male jurors for no apparent reason, three of whom were backstruck after being accepted by the defense, with the resulting jury composed of eleven women and one man. These facts evidence a pattern of strikes against male jurors and a disparate impact on the final composition of the jury. Therefore, the trial court should have required the prosecutor to offer gender-neutral explanations for the strikes.
Because it is impossible to meaningfully review whether the defendant proved his claim that the prosecutor impermissibly struck male jurors solely because of their gender, we find it necessary to remand the matter to the trial court for an evidentiary hearing at which the court is to require the prosecutor to present gender-neutral reasons for the strikes. The trial court is then to make a final determination of whether the defendant has met his burden of proving purposeful discrimination. If the trial court finds that the defendant cannot meet his burden under the applicable law, the defendant's conviction and sentence are affirmed. In the event that the trial court determines that the prosecutor did exercise the peremptory challenges in a discriminatory manner in violation of the Equal Protection Clause, the trial court is to grant the defendant a new trial. Both parties' right to appeal from any adverse decision regarding the J.E.B. claims is reserved.

B. Other Assignments of Error
In his first assignment of error, the defendant argues that the state manipulated the judicial system in order to deprive him of his constitutional right to the counsel of his choice. The defendant argues he had retained two attorneys for his case, Mr. Clive Smith and Mr. Perman Glenn. He goes on to argue that the district attorney manipulated the process by requesting that a trial judge continue another case in which Mr. Glenn represented a different client until the date of the defendant's trial, so that Mr. Glenn would be unavailable to assist Mr. Smith with defendant's case. He further argues that the trial court's denial of his motion for a continuance deprived him of his right to counsel of his choice.
The record reflects that Clive Stafford Smith enrolled as the defendant's counsel on October 16, 1996, approximately seven and one-half months before trial was to begin. The record does not list Perman Glenn as enrolled counsel prior to trial, but Mr. Smith states in his brief that he secured an agreement from Mr. Glenn to take responsibility for half of the trial.
Mr. Glenn was also involved in the defense of another client facing murder charges in another section of criminal district court on May 21, 1997. On that date, the trial judge in that other case granted the state's motion for a continuance because the prosecutor had just been supplied with an alibi defense. The trial judge set that trial to begin one day before the defendant's trial in this case. Neither Mr. Glenn nor Mr. Smith took any action to request a continuance in Mr. Givens' case in the interim week before his trial was to begin. However, on the first day of Mr. Givens' trial, May 28, 1997, Mr Smith lodged an objection at being forced to go to trial without Mr. Glenn, arguing that he was "essentially denied of counsel." The prosecutor countered by noting that Mr. Glenn "was not of counsel as first lead" on the other case or this case. Further, the prosecutor argued that in Mr. Givens' case, thus far, Mr. Glenn had only been present once at the DNA hearing and that *452 he had been "second chair" then as well.[6] The prosecutor also noted that the other trial in which Mr. Glenn was involved would be completed that same day.
Mr. Smith did not dispute the prosecutor's assertions, but objected when the trial judge refused to grant a continuance. In denying the continuance, the trial court noted that not much beyond picking the jury would take place that day and that Mr. Glenn would be available for trial the following day. In fact, Mr. Glenn was not available until the third, and final, day of Mr. Givens' trial.
As a general proposition, a person accused in a criminal trial has the right to counsel of his choice. See La. Const. art. I, § 13; State v. Jones, 97-2593, pp. 2-3 (La.3/4/98), 707 So.2d 975, 976-77 (citing State v. Harper, 381 So.2d 468, 470-71 (La.1980)). However, this court has consistently held that this right cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. See State v. Seiss, 428 So.2d 444, 447 (La.1983); State v. Champion, 412 So.2d 1048, 1050 (La.1982); State v. Johnson, 389 So.2d 1302, 1304 (La.1980).
Further, while a criminal defendant may have a right to be represented by counsel of his choice, neither this court nor the United States Supreme Court has found that criminal defendants have a constitutional right to have more than one retained counsel present at trial. In fact, Louisiana law holds the opposite. See, e.g., Jones, 707 So.2d at 978 (holding that indigent defendant has no statutory right to having two attorneys in capital case); State v. Burnette, 337 So.2d 1096, 1101 (La.1976) (finding trial court did not err by denying motion for continuance because of co-counsel's absence when defendant was represented by another experienced attorney); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971), vacated on other grounds, 408 U.S. 939, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1972) (holding that trial court did not err by denying motion for continuance presented on date of trial because a death in defense counsel's family caused his absence when defendant's other experienced, court-appointed attorney was present).
In the present case, Mr. Givens was at all times represented by counsel. Mr. Smith, an experienced criminal defense attorney had been enrolled as counsel for seven months prior to trial beginning. He represented the defendant throughout the majority of pre-trial hearings, the trial itself, and he represents the defendant on appeal. It does not appear that Mr. Glenn was to play any kind of pivotal role in the defendant's case. It is questionable from the record whether Mr. Glenn was truly retained by the defendant in this case in the first place.
However, assuming arguendo that the defendant's Sixth Amendment right to counsel was somehow violated by Mr. Glenn's absence, the defendant has not pointed to what adverse effects or prejudice he suffered because Mr. Glenn was not present to assist Mr. Smith, which showing must be made for him to be entitled to relief. The United States Supreme Court has instructed that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation." United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). The Court in Morrison went on to explain that:
Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement *453 identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceedings....
Id. at 365, 101 S.Ct. at 668.
In the instant case, the defendant would not be entitled to any relief on this claim as he has not specified any prejudicial effects resulting from Mr. Glenn's absence. Rather than arguing that the defendant suffered any adversity, as to do so would reflect negatively on Mr. Smith's performance at trial, the defense suggests that there should be a per se rule that a criminal conviction must be reversed if one of the defendant's retained counsel was absent during part of the trial, even if the defendant was still competently represented by an experienced attorney at trial. Such a rule would not serve the interests of justice and would be unduly burdensome on our judicial system. Accordingly, this assignment of error is without merit.
In the defendant's third assignment of error, he argues that the trial court committed reversible error and abused its discretion by not granting a mistrial when a witness testified to crimes for which Mr. Givens was not on trial. The defendant was charged with two rapes in this case involving two victims, D.K. and P.A. The defendant was also indicted for the rape of a third victim that took place on the same night P.A. was raped,[7] but the charges stemming from that attack were severed from the charges in this case. No evidence of that rape was to be admitted at trial. The defendant argues that the prosecutor impermissibly sought to elicit testimony from a police officer about that third rape. The complained of testimony took place when the prosecutor was attempting to rebut the defense's effort to point the finger at Earl Patterson, the man caught driving D.K.'s car, for the rape of D.K.:
Prosecutor: And are you aware of the fact that Mr. Givens was also identified by another rape victim for a rape that occurred on that Saturday night, Sunday morning?
Witness: Yes.
Prosecutor: At that time, both Mr. [Earl] Patterson and Mr. [Bryan] Morgan were in jail, is that correct?
Witness: Yes. He was identified in two other rapes, one where
At that point, a bench conference ensued, and the defendant moved for a mistrial on the grounds that the officer made an impermissible reference to another crime, the rape of a third victim a few hours after the attack on P.A.
The defendant argues that La. Code Crim. P. art. 770 mandated a mistrial in this case and that the defendant's conviction should therefore be reversed.[8] Article 770 provides in relevant part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
*454 The defendant argues that it was the prosecutor's question that elicited a comment referring directly to the third rape, and, therefore, the mistrial should have been automatic under this article.
Contrary to the defendant's argument, the officer's testimony does not fall under Article 770, as it was not a comment or remark made by a judge, district attorney or court official. Further, the record does not support the defendant's argument that the prosecutor was attempting to solicit the remark about the two other rapes, as the comment was unresponsive to the prosecutor's question regarding the whereabouts of Mr. Patterson and Mr. Morgan. Therefore, the remark would fall under La.Code Crim. P. art. 771, which provides that the trial court may grant a mistrial if an admonition is not sufficient to assure the defendant of a fair trial when a witness makes an irrelevant or immaterial remark or comment of such a nature that it might create prejudice against the defendant in the mind of the jury. When the trial court is satisfied that an admonition to the jury is sufficient to protect the defendant, that is the preferred remedy. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Narcisse, 426 So.2d 118, 133 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
The trial court in this case did not abuse its discretion in denying the defendant's motion for a mistrial under Article 771.[9] The officer's comment was not an unambiguous reference to an inadmissible other crime. The defendant was on trial for two counts of rape, and the comment could have been construed as referring to those two rape counts. Given the brief and unspecific nature of the reference, it was not so prejudicial that it deprived the defendant of a fair trial. The trial judge did not commit reversible error by denying a mistrial under these circumstances.
In his fourth assignment of error, the defendant complains that the trial court erred in either not disqualifying the District Attorney's Office or in not allowing him to relitigate motions that had been presented by prior counsel. The defendant argues that because four of the six student practitioners who had worked on his case when he was represented by the Loyola Law Clinic went to work for the District Attorney's Office, the District Attorney's Office should have been recused because of a conflict of interest.
La.Code Crim. P. art. 680 provides:
A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the party accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
As a general matter, in an action to disqualify a district attorney, the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. See State v. Bourque, 622 So.2d 198, 216-17 (La.1993); State v. Marcal, 388 So.2d 656, 659-60 (La.1980)
*455 The defendant's argument is that the District Attorney's Office should have been recused because four student practitioners with the Loyola Law Clinic, who had at different times represented the defendant before Mr. Smith enrolled as counsel, graduated from law school and accepted employment with the District Attorney's Office. The defendant basically asserts a general appearance of impropriety regarding the situation and only points to one instance when a former student practitioner appeared in the courtroom and allegedly spoke to the defendant. Other than that one instance, the defendant has not alleged any specific act of impropriety. He has not alleged, nor is there any evidence, that any of the former student practitioners actually participated in or otherwise aided the prosecution.[10]
The trial court did not err by denying the motion to recuse the District Attorney's Office under Article 680. We agree with the court of appeal's conclusion that:
There is no support in the record to show that these four assistant district attorneys had any part in the prosecution of the present case; and, the mere fact of their employment with the District Attorney's Office, without more, is not sufficient to meet the defendant's burden of proof on the motion to recuse.
Therefore, this assignment of error is also without merit.
In the defendant's fifth, and final, assignment of error, he argues that the prosecution should not have been permitted to withdraw from negotiations for a plea agreement with the defendant. The defendant asserts that the prosecutor initially discussed a plea of 35 years in this case, and that the defendant was agreeable to that plea. He further alleges that the offer was improperly withdrawn by the District Attorney's Office because Mr. Smith represented Judge Frank Marullo in an election law challenge to Camille Buras, who the defendant claims was illegally financing her campaign with funds from the Harry Connick, the District Attorney.
In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. See State v. Louis, 94-0761, p. 7 (La.11/30/94), 645 So.2d 1144, 1148 (citing State v. Nall, 379 So.2d 731 (La. 1980); State v. Lewis, 539 So.2d 1199 (La. 1989)). The first step under contract law is to determine whether a contract was formed in the first place through offer and acceptance. Id. at 1149; La.Civ.Code art. 1927. The party demanding performance of a contract has the burden of proving its existence. Louis, 645 So.2d at 1149. In the context of plea bargains, a defendant may demand specific performance of the state's promise if he can show that the parties reached an agreement, that he performed his part of the agreement, and that in doing so, he relinquished a fundamental right. Id. at 1149-50. See also State v. Tanner, 425 So.2d 760, 763 (La.1983).
In the instant case, the defendant has not proved that he and the prosecutor reached an enforceable agreement in the first place. Nothing in his brief indicates that a final plea agreement was negotiated; he only asserts that there were initially some discussion of a plea bargain. Further, even if the parties had reached some kind of agreement, absent a showing of detrimental reliance prejudicial to the substantial rights of the defendant or evidence of bad faith by the District Attorney's Office, the prosecutor remained free to withdraw from a plea agreement up to *456 the time the plea was entered. State v. Caminita, 411 So.2d 13, 16 (La.1982). The defendant has made no such showing in this case, but has only offered unsubstantiated allegations that the state backed out of the bargain as part of a political vendetta against defense counsel. The defendant has not established that an enforceable plea agreement existed and that he was, therefore, entitled to specific performance. Therefore, we find this claim to be without merit.

Conclusion
The defendant has only presented one argument that entitles him to some relief. He has presented a valid claim that the state appears to have impermissibly struck male jurors based solely on their gender. Because of the trial court's failure to require the prosecutor to present genderneutral explanations for the strikes, this court cannot meaningfully review the defendant's claim. It is, therefore, necessary to remand the case to the trial court for a hearing on this issue so that the prosecutor can introduce into evidence genderneutral reasons for challenging the potential male jurors. As to the defendant's other assignments of error, they do not constitute reversible error. Therefore, the defendant's conviction and sentence are affirmed in part, and the case is remanded in part for further proceedings on the defendant's claims under J.E.B.
NOTES
[1] A review of federal case law reveals that many federal circuits also consider a partial remand to be the proper remedy in cases where it is unclear whether the defendant established a prima facie case of discrimination in juror selection or the trial judge failed to properly address the defendant's claims of discrimination in use of peremptory strikes or failed to require neutral explanations. See, e.g., Jordan v. Lefevre, 206 F.3d 196 (2d Cir. 2000) (affirming in part, reversing and remanding in part, in order for the trial court to determine whether the state's use of challenges was discriminatory and/or order a new trial); Coulter v. Gilmore, 155 F.3d 912 (7th Cir.1998) (requiring state court to hold a new hearing on the defendant's Batson claim at which the proper methodology for evaluating the claim be followed or else order him a new trial); Tankleff v. Senkowski, 135 F.3d 235 (2d Cir.1998) (remanding because defendant was entitled to a hearing on his Batson claim, but finding that none of the defendant's other claims warranted federal habeas relief).
[2] Because of the nature of these offenses and for purposes of consistency with the court of appeal's opinion in this matter, we will refer to the victims by their initials.
[3] We note that during voir dire the parties and the trial judge referred to the defendant's challenges as "Batson challenges," as did the court of appeal in its opinion. However, the defendant's objections to the state's use of peremptory strikes were made pursuant to J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), not Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as they were based on grounds of gender discrimination rather than racial discrimination. We will refer to the challenges as J.E.B. claims, which is technically correct and in accordance with the defendant's brief filed in this court, where he refers to his claims as arising under J.E.B.
[4] The prosecutor was referring to Mr. Linderman, who was struck by the defense because of his pro-death penalty stance towards rapists.
[5] Hypo-geometric distribution is a known mathematic term and refers to a random selection made without repetition among objects of two distinct types. So-called binomial distributions have long been associated with jury discrimination issues. See Castaneda v. Partida, 430 U.S. 482, 496, 97 S.Ct. 1272, 1281, 51 L.Ed.2d 498, n. 17 (1977). See also Finkelstein, The Application of Statistical Decision Theory to the Jury Discrimination Cases, 80 Harv. L.Rev. 338, 353-56 (1966).
[6] The defense asserts in its brief that Mr. Glenn was also present at the hearing on the defense motion to recuse the District Attorney's Office on April 10, 1997. However, the minute entries in the record do not reflect who was present at that hearing.
[7] To be more specific, both rapes took place early on the morning of June 27, 1993, at approximately 1:00 a.m. and 3:00 a.m.
[8] It should be noted that even if a mistrial had been warranted under Article 770, it would not result in an automatic reversal of the defendant's conviction, but would be an error subject to harmless error review. See State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-02 (rejecting prior per se rule of reversing convictions based on error in introducing inadmissible other crimes evidence and holding that the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis).
[9] Defense counsel chose not to have the trial judge admonish the jury regarding the comment, stating that it was his opinion that such an admonition would "raise a red flag" and would "make the situation worse."
[10] The defendant's real complaint appears to be that the student practitioners did not act effectively as counsel, as his brief points more to their inexperience, shortcomings, and their failing to meet with the defendant than to any real conflict of interest because of their future employment with the District Attorney's Office.