817 So.2d 48 (2002)
STATE of Louisiana
v.
Landour BOUIE.
No. 2000-K-2934.
Supreme Court of Louisiana.
May 14, 2002.
*49 Shawn R. Bush, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Douglas P. Moreau, District Attorney, Brent M. Stockstill, Monisa L. Thompson, Baton Rouge, Counsel for Respondent.
CALOGERO, Chief Justice.
We granted this writ application to determine whether the district court abused its discretion in not allowing the defendant to withdraw his plea of guilty, given that the trial judge had previously interjected his own opinions into the plea negotiations as to whether the defendant would be acquitted or found guilty after a jury trial. For the reasons set forth below, we find that, under the circumstances of this case, the defendant should have been permitted to withdraw his guilty plea.
The state charged the defendant and his co-defendant, Cornelius Johnson, with attempted second degree murder in violation of La. Rev. Stats. 14:27(14:30.1). The charge arose out of the shooting of Eddie Hughes, who had intervened in an attempt by the defendant and Johnson to secure the services of a prostitute doing business near Hughes's home. Using a rifle that he retrieved from the defendant's house, where the two men had driven after the initial dispute with Hughes, Johnson confronted Hughes on the street outside his home and fired a bullet that struck the victim in the throat, severing his spinal column. The victim survived. Trial was set for July 7, 1997.
The transcript for the day of trial reveals that the defendant waived his right to a jury trial and entered a plea of guilty only after extensive efforts by the trial judge to convince the defendant that a guilty plea, rather than going to trial, was in his best interest. From the outset, the defendant indicated that he wanted to go to trial, and throughout the discussions, he consistently indicated that he believed he was innocent of the charge of attempted second degree murder. But the trial judge clearly did not want to take this matter to trial, for each time the defendant indicated that he wanted to go to trial, or vacillated in deciding what to do, or questioned the state's case against him, the trial judge would indicate to the defendant that, if he went to trial, a jury would most likely find him guilty as charged, even viewing the defendant's story in its most favorable light, and that he would be sentenced up to 100 years as a second felony offender, instead of the 25 years the trial judge was offering. Eventually, the defendant capitulated and agreed that a guilty plea "seem[ed] like" the best thing to do. Yet, at the hearing on the motion to withdraw the guilty plea, the defendant emphatically explained that he pleaded guilty instead of going to trial because he did not believe that he would get a fair chance in the trial judge's court. In short, this defendant waived his right to a trial by jury because the trial judge, rather than the defendant's attorney or the prosecutor, persuaded him that there was no reasonable alternative to pleading guilty.
The record supports the defendant's contentions. At the outset of the day set for trial, the defendant, represented by appointed counsel, stated that he understood that he was going to trial, and asserted that he wanted to go to trial. Immediately, the trial judge told the defendant that he was being tried for attempted *50 second degree murder and that "if you go to trial[,] the penalty for that charge is fifty years at hard labor." The trial judge followed up by telling the defendant that, because he had been on probation at the time of the offense, he could be found guilty of being a second felony offender and receive a sentence of up to 100 years. But if he pleaded guilty, the trial judge then told the defendant, and if the state filed a multiple offender bill, the trial judge would give the defendant the minimum twenty-five years at hard labor, or as low as ten years if the state did not file the multiple offender bill.
When the defendant was asked if this information helped him to make up his mind, the defendant responded affirmatively, but he also asserted, "Your Honor uhI'm just going you know, I haven't did anything." The trial judge quickly responded with his view on the certainty that the defendant would be convicted if he chose to go to trial [emphasis supplied]:
COURT: Well, I don't know if you did or not. See, that's the one thing that I don't know about, cause they don't tell me about the facts of the case until after I hear `em from the witness stand. So I don't really know. Do you understand that?
BOUIE: Yes, sir.
COURT: You may be able to be found not guilty, I don't know that either. But I can tell you this, all of the years that I've been either a prosecutor or a judge, I don't think I've ever seen more than one or two people who went to trial found not guilty. The D.A. knows what they're doing when they try somebody, generally, and the jury seems to believe them, generally. And the odds are not in your favor of going to trial and winning a case. Do you understand that? Do you?

BOUIE: Yes, sir.
COURT: And when I say all the years I've been doing that, that's been since 1981, so how long is that? Sixteen years I've been doing this, either a judge or an assistant district attorney and I think I've found two people found not guiltyuhseen two people found not guilty in felony trials. Now, if you go to trial, I'm telling you the odds are against you winning. Do you understand that?

BOUIE: Yes, sir.
COURT: All right, then if you lose, then you're looking at the hundred years. Do you understand that?

BOUIE: Yes, sir.
COURT: If you plead guilty, you're looking at no more than twenty-five and maybe as low as ten. Do you understand that?

BOUIE: Yes, sir.
At this point, the defendant was allowed to confer with his counsel and the matter of his co-defendant was taken up by the trial judge. Johnson, too, expressed indecision and questioned the state's version of the facts, but, after discussions with the trial judge, in which the judge offered the same deal and stated that a hundred-year sentence meant that Johnson would die in prison, Johnson eventually entered a plea of guilty as charged in return for a sentencing commitment by the court of twenty-five years imprisonment at hard labor, the minimum term for a second offender convicted of attempted murder and sentenced as a multiple offender. In its recitation of the case, the state indicated that Johnson had given a video-taped statement in which he stated that the defendant had encouraged him to retrieve the weapon and to shoot the victim. According to the state, Johnson said that, on the way back to the scene, the two men had struck a *51 bargain in which the defendant agreed to drive the getaway car and Johnson vowed to shoot the victim. Johnson, in court, disagreed with the state's recitation, but he conceded that there had been a shooting and that what the state had said had basically happened "in so many ways."
After Johnson's plea was completed, the defendant returned to court, whereupon the judge asked if anything had changed and the prosecutor stated that he had now learned that the defendant had a prior conviction. The judge then immediately told the defendant, "Mr. Bouie, you're back to where we started awhile ago. You're looking at going to trial, getting convicted of this charge, then being sentenced as an habitual offender up to one hundred years in prison. Do you understand that?" The judge then repeated that he would sentence the defendant to the minimum of twenty-five years if he pleaded guilty and the state filed the multiple offender bill, which he indicated the state was prepared to do.
But the scenario was repeated again when the defendant was asked what he thought he was facing and he replied, "Whew, um, I really don't know." Expressing some frustration, "All right, that's why I keep trying to explain it to you," the trial judge reiterated that the defendant was charged with attempted second degree murder, which carries a sentence of up to 50 years at hard labor, that a jury was waiting upstairs and would return a verdict in a few days if he elected to go to trial that day, that the defendant in fact had a prior felony conviction, and that the sentence would be up to 100 years at hard labor as a second felony offender if he went to trial, but only 25 years if he pleaded guilty. After conferring with his attorney, the defendant agreed to plead guilty, and the Boykin examination commenced.
During the colloquy, the trial judge gave a similar response anytime the defendant vacillated. When the defendant indicated that he thought he had been promised 10 years, the trial judge responded that it was only if the state chose not to file a multiple offender bill would he impose a sentence between 10 and 25 years at hard labor. The trial judge then asked if the defendant wanted to plead guilty. When he received no response, the trial judge stated that if not, "we've got the people waiting upstairs to get the trial started." The defendant responded, "Iwhew, um,." The trial judge again asked if the defendant wanted to finish the guilty plea and if he understood what was happening. The defendant said he did "in a way" and expressed doubt about the evidence against him. The trial judge then explained the law of principals, using the getaway driver of an armed robbery as an example. The trial judge informed the defendant that, if the jury believes what the state says he did, provided a gun to Johnson, drove him back to the scene, and encouraged him to shoot the victim, then the defendant would be as guilty if he had shot the victim.
The trial judge then had the state repeat its case against the defendant for the record.[1] Unlike his co-defendant Johnson, the defendant expressed considerable doubt that he was guilty of any crime for transporting Johnson back and forth from the scene of the shooting. In his own statement to the police, the defendant had acknowledged only that he had been on the scene with Johnson to pick up a prostitute, *52 that after the initial confrontation with the victim he had driven Johnson back to his (the defendant's) house where Johnson retrieved a rifle that he (Johnson) had hidden there earlier that evening, and that he (the defendant) had then returned with Johnson to the scene to "turn a trick" with the prostitute. The defendant had denied in his statement that he knew beforehand that Johnson would shoot the victim and he continued to insist in court that the two men had gone back "to see... where the trick was ... [Johnson] got out the car and the only thing I heard was a shot...." The trial judge explained that, even in the light most favorable to the defendant, a jury could still find him guilty of attempted second degree murder:
COURT: You understand that even in the light most favorable to you, the way you want to paint it, a jury could still find you guilty of attempted second degree murder. Do you understand that?
BOUIE: Yes, sir.
COURT: They may or they may not. I'm telling youI don't know what a jury would do with those facts. But if that's the best scenario that you have, a jury might still find you guilty. Do you understand that?
BOUIE: Yes, sir.
COURT: All right, now taking the worst case scenario, which would be where Mr. Johnson gets up and testifies and says all of those other things, they're going to find you guilty. Do you understand?
BOUIE: Yes, sir.
COURT: All right, now and even if you take your version and you find that you, you think that you may or may not be guilty, do you still want to go ahead and plead guilty because you think its in your best interest to do so?
BOUIE: Well, right now, you know, [ ] it looks like everything is pointing at me and like I said, I don't even know the guy that was shot. I don't, you know, I was coming over there, they got out the car and the only thing I heard was a shot.
COURT: But you understand what I just got through asking you?
BOUIE: Yeah, I understand what you just said.
COURT: Do you think it's in your best interest at this point to go ahead and accept a guilty plea and get the lesser years that you've been offered rather than running the risk of going to trial and getting the Habitual Act charged against you and getting, maybe, up to a hundred years?
BOUIE: (no answer)
COURT: Do you think this guilty plea today, right now, is better than doing that? In other words, this is in your best interest at this point.
BOUIE: It seems like, Your Honor.
The trial court then accepted the defendant's guilty plea.[2] However, after the state filed a multiple offender bill, but before sentencing, the defendant moved to withdraw his plea, alleging that he had *53 been under "extreme emotional stress" when he entered the plea. At the hearing on the motion, the defendant testified that the court had, in effect, stampeded him into pleading guilty, not simply by the sentencing offer of 25 years imprisonment at hard labor but also by informing him, in effect, that "if I take you to trial, I was not going to win in your courtroom. You was going to give me fifty to a hundred years. So I feel as though I wasn't going to win no matter what." On the basis of that testimony, the attorney representing the defendant asked the court at the close of the hearing, "You saw [two acquittals] in nearly a twenty-year period ... How is he going to knowingly and intentionally plead guilty after he hears that, Your Honor?"
The trial judge denied the motion on grounds that it had spent over an hour and a half with the defendant in a painstaking effort to persuade him that a guilty plea was in his best interests "because he probably would have gotten convicted and be[en] sentenced to fifty to a hundred years .... instead of doing that, I gave him twenty-five, and, certainly ... that was in his best interest...." The court subsequently adjudicated the defendant a multiple offender on the basis of his admission that he had been convicted of a prior felony, and sentenced him to the promised term of 25 years imprisonment at hard labor. The court of appeal affirmed the defendant's conviction and sentence on grounds that his plea "was the result of an informed decision that the plea was defendant's best course of action under the circumstances." State v. Bouie, 99-2788, pp. 8-9 (La. App 1 Cir. 9/22/00), 771 So.2d 322 (unpub'd). We granted the defendant's writ application to review the correctness of that finding and of the district court's ruling denying the motion to withdraw the guilty plea. State v. Bouie, 00-K-2934 (La.9/28/01), 797 So.2d 679.
The defendant claims that the district court judge erred in refusing to allow him to withdraw his guilty plea on the ground that he did not freely and voluntarily enter into the plea agreement with the judge.
A trial judge has broad discretion in ruling on a defendant's motion to withdraw his guilty plea before sentencing. La.Code Crim. Proc. art. 559. When circumstances indicate that the plea was constitutionally invalid, the trial judge should allow the defendant to withdraw his plea. State v. Toney, 412 So.2d 1034, 1035-36. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court stated that the validity of a guilty plea turns on whether the defendant is informed of the rights he waived and whether his decision to waive his rights by pleading guilty is knowing and voluntary. See also State v. Jones, 404 So.2d 1192, 1196 (La.1981); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). However, as a general rule, "an otherwise valid plea of guilty is not rendered involuntary merely because it was entered to limit the possible maximum penalty to less than that authorized by law for the crime charged." State v. Compton, 367 So.2d 844, 847 (La.1979).
Whether to permit the defendant in this case to withdraw his plea of guilty turns on the voluntariness of his plea. In that regard, the defendant contends that the nature and extent of the district court judge's participation in the plea agreement had a coercive effect on his decision to plead guilty.
While this court has not directly addressed the issue of a judge's participation in negotiating a plea agreement, in State v. Chalaire, 375 So.2d 107, fn. 2 (La.1979), albeit in dicta, we stated:

*54 Although not objected to in this appeal, the judge's active participation in the plea negotiations evokes our concern. The ABA Standards recommend that the trial judge should not be involved with plea discussions before the parties have reached an agreement. ABA Standards, The Function of the Trial Judge s 4.1 (Approved Draft 1972); Accord, President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 136 (1967); Fed.R.Crim.P. 11(e)(1); ALI Model Code of Prearraignment Procedure s 350.3(1) (Proposed Official Draft 1975); National Advisory Commission on Criminal Justice Standards and Goals, Task Force Report on Courts s 3.7 (1973). Most of the law review writers who have addressed the issue also condemn judicial bargaining. See Alschuler, Plea Bargaining, 76 Colum.L.Rev. 1059, 1060 n. 8 (1976).
As we noted in Chalaire, the reasons for proscribing judicial participation in plea negotiations, according to the ABA Standards Commentary, are:
(1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. ABA Standards, Pleas of Guilty s 3.3(a) Commentary 73 (Approved Draft 1968).
On the other hand, we also pointed out that "Professor Albert W. Alschuler persuasively criticizes the ABA Standards' position... primarily on the ground that removal of the judge from the bargaining process usually places the sentencing prerogative in the district attorney's office." Id. (citing Alschuler, supra); see also Alschuler, Sentencing Reform and Prosecutorial Power: A Critique of Recent Proposals for "Fixed" and "Presumptive" Sentencing, 126 U. Penn.L.Rev. 550, 564 (1978). In addition, we noted that "Professor George Pugh worries about the lack of an impartial arbiter when the trial judge does not participate in the plea bargain." Id. (citing Standards for Criminal Justice, 57 F.R.D. 229, 363 (1972)). Most importantly however, we concluded that:
Although we do not adopt either view at this time, we note that any judge who directly participates in plea discussions should take extreme care to avoid the dangers described in the ABA commentary. ABA Standards, Pleas of Guilty § 3.3(a), supra.

Id. at n. 1.
In our decision today, we do not adopt a rule absolutely prohibiting the participation of Louisiana trial judges in plea negotiations, such as that provided by the Federal Rules of Criminal Procedure.[3] Instead, we find that the interjection *55 of the trial judge's personal knowledge and opinion in the plea discussions under the circumstances of this case did, or probably did, have a coercive effect on this particular defendant's decision that a guilty plea was in his best interest.
In the present case, the trial judge's explanations of the penalties the defendant faced if he went to trial and if he were convicted by a jury, and of the trial judge's discretion to impose greater penalties after conviction than offered in the course of plea negotiations, were not inherently coercive because the advice concerned information that an accused ought to possess to enter a knowing and intelligent guilty plea. See State v. Frank, 344 So.2d 1039, 1045 (La.1977). Furthermore, the court's explanation of the law of principals under La.Rev.Stat. 14:24, which would form the basis of any verdict rendered by a jury, also served the same end. See McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (footnote omitted)).
However, when the trial judge coupled those lengthy explanations with his personal view that the result of a jury trial was all but a foregone conclusion, he went beyond simply facilitating the entry of a knowing and voluntary guilty plea. The trial judge's discussion of the chances of an acquittal at a jury trial conveyed the court's personal experience over the years in unrelated cases and its confidence in the soundness of the exercise of the charging discretion of the District Attorney's Office. No matter how benign the judge's intent, and no matter how solicitous of the defendant's interests, the trial judge clearly conveyed his opinion that this particular defendant had no realistic choice other than to plead guilty or face penalties ranging from two to four times as great as the court offered. Aside from the question of its reliability, such a message was inherently coercive because it came from the court, not from the prosecutor. The ABA Standards express the concern that "judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty.... Among other things, `it might lead the defendant to believe that he would not receive a fair trial, were there a trial before the same judge.'" United States v. Bruce, 976 F.2d 552, 556 (9th Cir.1992)(quoting Notes of Advisory Committee on Rules, 1974 Amendment, 18 U.S.C.A. Federal Rules of Criminal Procedure 1 to 11 (West 1986) at 351); see also Standley v. Warden, 115 Nev. 333, 990 P.2d 783, 785 (1999) ("Appellant had good reason to fear offending the judge if he declined [the plea offer] because the same judge would have presided over the trial and, if the trial resulted in a conviction, the judge would have determined the appropriate sentence."). The defendant here voiced those concerns in his own words at the hearing on his motion to withdraw his guilty plea when he explained to the court that he took the sentencing offer because, "You told me, if I take you to trial, I'm not going to win in your courtroom."
We recognize that a defendant may enter a voluntary guilty plea even while he continues to protest his innocence. North Carolina v. Alford, 400 U.S. 25, 36, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970)("[T]he Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit *56 his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence."). Therefore, the defendant's continuing reservations about his culpability as a principal for the acts of Johnson, which he never entirely put aside during the colloquy, did not prevent him from entering a voluntary guilty plea. However, Alford presupposes that the defendant "must be permitted to judge for himself in this respect." Id., 400 U.S. at 33, 91 S.Ct. at 165 (internal quotation marks and citation omitted). Therefore, whether the offered plea agreement was in fact in the defendant's best interest was not for the court to decide, but for the defendant to determine with the advice of his counsel.
We concede that a fine line may at times separate a trial judge's attempts to insure that the defendant understands that a guilty plea might serve his best interest and the overbearing of a defendant's will to reach a result the court, with the best of intentions, deems appropriate. However, we find that the trial judge in this case, by stating his personal views on the virtual certainty that the defendant would be convicted by a jury, as well as on the prospect of a sentence much greater than that offered, when this judge would be determining the sentence to be imposed following the guilty verdict, overstepped his bounds and acted as more of an advocate than as "a neutral arbiter of the criminal prosecution." Bruce, 976 F.2d at 557. We conclude that the defendant's guilty plea under these circumstances was not knowingly and voluntarily entered, such that the district court abused its discretion in not granting the defendant's motion to withdraw the guilty plea.

DECREE
Under the circumstances of this case, we conclude the defendant should have been permitted to withdraw his plea of guilty.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WEIMER, J., dissents with reasons.
TRAYLOR and VICTORY, JJ., dissent for the reasons assigned by WEIMER, J.
WEIMER, J., dissenting.
Recognizing that the matter considered presents a close call and the majority opinion is very persuasive, I respectfully dissent for the following reasons.
On the day scheduled for trial and following a plea negotiation conference, the defendant appeared before the court, waived his right to a jury trial and entered a guilty plea. Apparently, at some point during the plea negotiations, the trial judge participated in discussions with the defendant, his counsel, and the district attorney at which time it was strongly suggested that a plea was in defendant's best interest. During this time, the trial judge advised the defendant regarding the success rate of the district attorney's office along with the fact that during the judge's career he had only witnessed a few acquittals. Defendant was apprised of the sentence which could be imposed under both circumstancesif he pled guilty or if he proceeded to trial and was found guilty. Both sentencing caps hinged upon whether or not the district attorney's office would file a multiple offender bill following conviction.
Admittedly, the statements made by the trial court, if taken out of context, could be construed as going beyond what should have been stated. However, in the context of the entire proceeding, I do not believe the statements were sufficient to coerce the defendant or unreasonably persuade him to plead guilty. It has not been alleged that anything the trial court stated was inaccurate.
*57 Following the colloquy with the trial court, the proceedings were suspended during which time the defendant had an opportunity to confer with counsel privately. Other matters were handled by the court during that time frame.
Thereafter, during the time the Boykin[1] examination was conducted, the trial court repeatedly stated it could not predict what the jury would do in defendant's case. It should be noted that defendant's admitted behavior in the events surrounding the shooting subjected him to a risk of conviction. This risk of conviction was amplified when the statement of his co-defendant, which implicated the defendant, was considered. Consequently, the state had a strong case against the defendant.
It is also important to note that this was a "best interest" plea as sanctioned by North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
The trial court must be ever mindful to refrain from injecting itself too deeply into the plea agreement such that the defendant perceives he is being coerced or persuaded to plead guilty by the court. It is not the court's role to decide what is in the defendant's best interest. The court must maintain its role as an independent and impartial magistrate. Certainly, the trial court can and must inform the defendant of the consequences of his plea. However, in doing so, the court must avoid the impression of coercing or persuading the defendant to plead guilty. Despite the defendant's allegations, I believe the court succeeded in avoiding that impression.
NOTES
[1] There was some confusion as to what the state alleged that the defendant had said in his video-taped statement. The defendant mistakenly believed that the state was alleging that he had told the police in his video-taped statement that he had encouraged Johnson to shoot the victim; consequently, he claimed that the state was not telling the truth.
[2] Notably, the trial judge never explained to the defendant that, to prove him guilty of attempted second degree murder, the state was required to prove that the defendant, even as a principal, see State v. Pierre, 93-0895 (La.2/3/94), 631 So.2d 427; State v. Tobias, 452 So.2d 157 (La.1984), had possessed the requisite specific intent to kill the victim. See State v. Huizar, 414 So.2d 741 (La.1982); State v. Strother, 362 So.2d 508 (La.1978). Consequently, whether a jury accepting the defendant's story as true could have rationally found the requisite specific intent proved beyond a reasonable doubt appears less certain than the trial judge advocated.
[3] Fed. R.Crim. Proc. 11(e)(1) provides:

(e) Plea agreement procedure.
(1) In general. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both. The court shall not participate in any such discussions. [Emphasis supplied.]
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).