838 So.2d 160 (2003)
STATE of Louisiana
v.
Anthony GUILBEAU, Jr.
No. 02-0972.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
*161 Earl B. Taylor, District Attorney, Alisa Ardoin Gothreaux, Opelousas, LA, for Appellee, State of Louisiana.
Edward Kelly Bauman, Louisiana Appellate Project, Lake Charles, LA, for Defendant/Appellant, Anthony Guilbeau, Jr.
Court composed of NED E. DOUCET, JR., Chief Judge, OSWALD A. DECUIR and MARC T. AMY, Judges.
AMY, Judge.
The defendant was convicted of one count of possession of cocaine, weighing more than twenty-eight grams but less than two hundred grams, and one count of possession of marijuana with the intent to distribute. He was sentenced to two concurrent sentences of five years at hard labor. The defendant appeals. He contends that his counsel rendered ineffective assistance and that the trial court erred in denying his motion to withdraw his guilty pleas. For the following reasons, we affirm the defendant's convictions. However, we vacate the sentence imposed for possession of cocaine finding it to be illegally lenient and we remand for resentencing.

Factual and Procedural Background
The record indicates that, in January 1999, police officers were called to the home of the parents of the defendant, Anthony Guilbeau, Jr. The call related to a domestic disturbance. While officers were at the scene, in excess of three hundred and fifteen grams of cocaine and four pounds of marijuana were found. In March 1999, the defendant was charged by bill of information with one count of possession of cocaine, in excess of two hundred grams, but less than four hundred grams, a violation of La.R.S. 40:967 and one count of possession of marijuana with intent to distribute, a violation of La.R.S. 40:966(A)(1).
At a plea hearing on May 17, 2001, and pursuant to a plea agreement, the defendant entered guilty pleas to the charge of possession of marijuana with intent to distribute, and the reduced charge of possession of cocaine, in excess of twenty-eight grams but less than two hundred grams, a violation of La.R.S. 40:967. The defendant subsequently filed a motion to withdraw his plea of guilty on the possession of cocaine charge. Following a hearing, the motion was denied.
On May 24, 2002, the trial court sentenced the defendant to five years at hard labor, without benefit of probation, parole, or suspension of sentence on the possession of cocaine charge and five years at hard labor on the possession of marijuana with intent to distribute charge. The sentences were ordered to run concurrently to one another.
The defendant appeals, assigning the following as error:
1. Anthony Guilbeau received ineffective assistance of counsel.
2. The trial court erred in refusing to allow Anthony Guilbeau to withdraw his pleas of guilty.

Discussion

Errors Patent
As is required by La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. Our review reveals a single patent error.
*162 For the offense of possession of cocaine, twenty-eight grams or more, but less than two hundred grams, the trial court sentenced the defendant to five years at hard labor without the possibility of parole, probation, or suspension of sentence. However, in 1999, at the time the offense was committed, the sentencing range for the offense was ten to sixty years at hard labor and a fine of fifty thousand to one hundred fifty thousand dollars.[1]
Pursuant to Acts 2001, No. 403, § 4, the sentencing provisions related to La. R.S. 40:967 were amended, with the penalty provision for possession of twenty-eight grams or more, but less than two hundred grams of cocaine changed to a range of five to thirty years at hard labor.[2] The amount of the fine required by La.R.S. 40:967(F)(1)(a) was not altered by the legislation. The amendment became effective prior to the imposition of the defendant's sentence on May 24, 2002. The trial court noted that it was sentencing the defendant in accord with the new sentencing statutes.
However, we note that Section 6 of Act 403 specifically provides that the provisions of the Act "shall only have prospective effect." Furthermore, in State v. Sugasti, 01-3407 (La.6/21/02); 820 So.2d 518, the Louisiana Supreme Court referenced the legislative pronouncement of Section 6 of Act 403 and observed that, while the trial court should consider the new sentencing provision in imposing sentence, "the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense." Id. at p. 5; 521. The supreme court states that if the legislature intended for the more lenient sentencing provisions of Act 403 to take effect immediately, "language signifying that intent could have easily been incorporated into the act." Id.[3]
Due to the supreme court's discussion in Sugasti, we conclude that the trial court erred in sentencing the defendant under the revised sentencing range of La. R.S. 40:967, resulting in an illegally lenient sentence. Further, in State v. Williams, 00-1725 (La.11/28/01); 800 So.2d 790, the Louisiana Supreme Court considered whether an appellate court could recognize *163 a trial court's failure to impose sentence without benefit of probation, parole, or suspension of sentence when the trial court was required to do so by the statute. The supreme court observed that a defendant has neither a constitutional nor a statutory right to an illegally lenient sentence and concluded that an appellate court may recognize an illegally lenient sentence on patent error review. Addressing constitutional concerns over such a recognition, the supreme court explained: "[W]hen a court complies with a nondiscretionary sentencing requirement, i.e., a mandatory minimum term or special parole provision(s), no due process violation is implicated because neither actual retaliation nor vindictiveness exists." Id. at p. 10; 798. The appellate court's ability to recognize the illegally lenient sentence was found to be authorized, in part, by La.Code Crim.P. art. 882, Subsection A of which provides: "An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." Williams, 00-1725; 800 So.2d 790. Accordingly, we recognize the defendant's sentence as illegally lenient and vacate the defendant's sentence for possession of cocaine, in excess of twenty-eight grams, but less than two hundred grams, and remand for resentencing in accordance with La.R.S. 40:967(F) as it existed at the time of the commission of the offense.

Ineffective Assistance of Counsel
In his first assignment of error, the defendant argues that his trial counsel was ineffective for allowing him to enter his guilty pleas without first having the trial court conduct a hearing on a pending motion to suppress. Further, he asserts that he should have then been advised by counsel to enter his plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to review the motion to suppress on appeal. Finally, he contends that his attorney was ineffective in failing to communicate with him prior to the day of trial.
With regard to a defendant's claim that his counsel rendered ineffective assistance, the Louisiana Supreme Court has explained:
A criminal defendant is guaranteed the effective assistance of counsel. United States Sixth Amendment; La. Const. art. I, § 13; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Washington, 491 So.2d 1337 (La.1986). To establish a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, that counsel's professional errors resulted in prejudice to the extent that it undermined the functioning of the adversarial process and rendered the verdict suspect. Strickland v. Washington, supra; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). This does not mean "errorless counsel [or] counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance." State v. Ratcliff, 416 So.2d 528, 531 (La.1982).
A claim of ineffectiveness is generally relegated to post-conviction, unless the record permits definitive resolution on appeal. E.g., State v. Prudholm, 446 So.2d 729 (La.1984). However, when the record is sufficient for review, this Court will reach the merits of complaints about counsel's performance and grant relief when appropriate. E.g., State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 32-35.
State v. Bright, 98-0398, p. 40-41 (La.98-0398); 776 So.2d 1134, 1157.
The record indicates that the motion to suppress focused on by the defendant *164 in his brief, was filed on April 3, 2001. The motion alleges the existence of a lack of probable cause for arrest, resulting in the unlawful search for and seizure of the cocaine. The defendant sought suppression of a statement to the police, the cocaine, and any other results of the search or statement. As is suggested by the defendant, the record does not reveal that the motion was ruled upon prior to the plea hearing.
Our review of the defendant's argument, along with review of the record, indicates that the record is insufficient to determine this issue on appeal. The focus of the defendant's argument is essentially on trial strategy, i.e., whether any decision by counsel regarding the motion to suppress was valid. Furthermore, the argument regarding whether counsel failed to adequately communicate with the defendant also may require evidence not contained in the record. While the defendant and his parents testified regarding contact with trial counsel, or lack thereof, the attorney did not testify. As the record is insufficient for review on appeal, consideration of this assignment is relegated to post-conviction proceedings should the defendant choose to avail himself of that opportunity.

Motion to Withdraw Guilty Plea
The defendant asserts the trial court erred in denying his motion to withdraw his guilty plea. In his brief to this court, the defendant references his plea hearing and what he contends are indications that his plea was not voluntarily entered. He states:
In the present case, the trial court was put on notice that Anthony Guilbeau expressed an unwillingness to enter a plea of guilty. Twice he stated that the cocaine was not his. This can best be seen by the recess ordered by the court and the fact that Anthony Guilbeau was twice Boykinized by the court. Anthony Guilbeau only pled guilty because, as he testified to, his attorney told him he would go straight to Angola to serve twenty years if he didn't. His attorney also told him that he would be prejudiced by a jury trial because of his hair and teeth.
(Record citations omitted.)
In State v. Bouie, 00-2934, p. 9 (La.5/14/02); 817 So.2d 48, 53, the Louisiana Supreme Court explained:
A trial judge has broad discretion in ruling on a defendant's motion to withdraw his guilty plea before sentencing. La.Code Crim.Proc. art. 559. When circumstances indicate that the plea was constitutionally invalid, the trial judge should allow the defendant to withdraw his plea. State v. Toney, 412 So.2d 1034, 1035-36. In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court stated that the validity of a guilty plea turns on whether the defendant is informed of the rights he waived and whether his decision to waive his rights by pleading guilty is knowing and voluntary. See also State v. Jones, 404 So.2d 1192, 1196 (La.1981); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971).
"On appeal, a trial court's denial of a motion to withdraw a guilty plea will not be reversed if the record clearly shows that the defendant was informed of his rights and of the consequences of his plea, and the plea was entered voluntarily. State v. Grogan, 00-1800, p. 3 (La.App. 3 Cir. 5/2/01); 786 So.2d 862, 864. However, "`an otherwise valid plea of guilty is not rendered involuntary merely because it was entered to limit the possible maximum penalty to less than that authorized by law for the crime charged.'" Bouie, 00-2934, p. 9; 817 So.2d at 53, quoting State v. Compton, 367 So.2d 844, 847 (La.1979)."
*165 A review of the extensive transcript from the guilty plea proceeding indicates the trial court advised the defendant of his rights as is required under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and that the defendant waived these rights, including his right to a trial. Additionally, the trial court advised the defendant of the possible penalties he could receive, explaining that a conviction associated with the possession of cocaine charge exposed the defendant to a sentencing range of ten to sixty years and that the possession of marijuana with intent to distribute carried a sentencing exposure of five to thirty years. Although the defendant claims his attorney pressured him into entering the plea, the defendant was given several opportunities at the plea hearing to proceed to trial but he refused and chose to enter into the guilty pleas. When the trial court asked the defendant whether he had been threatened or forced in any way into entering the plea, the defendant responded "No, sir."
In his motion to withdraw the guilty plea, the defendant asserted he desired to change his plea to not guilty due to his attorney's ineffectiveness in failing to have a hearing on the motion to suppress and in failing to communicate with him and his family. At the hearing on the motion to withdraw, Anne Guilbeau, the defendant's mother, and Anthony L. Guilbeau, Sr., the defendant's father, testified as to defense counsel's failure to communicate with them and their son.
However, Mr. and Mrs. Guilbeau's testimony also demonstrated that sufficient information was provided to indicate that the defendant was reducing his sentencing exposure by entering a plea to the reduced charge. Additionally, Mr. Guilbeau testified in pertinent part:
Q. But I'm talking about the smaller in other words, did all of you understand that what he was charged with, he could get a twenty to sixty year sentence and if he pled guilty on a plea bargain, he could get just a ten to sixty year sentence?
A. That's what Mr. Robideaux told us.
. . . .
Q. But did you understand what he told you?
A. Yeah.
Q. Okay. And isn't it true that after Mr. Robideaux told y'all that, you and your wife talked together and talked with Anthony and y'all encouraged him to plead guilty?
A. Yeah, we told him to gowe asked him the deal, the man said that's all he can do. Take that.
At the hearing on the motion to withdraw, the defendant testified the drugs found in the house did not belong to him. Also, the defendant testified his attorney told him to waive his trial by jury, explaining in pertinent part:
Q. And at that time did he tell you that the people in St. Landry Parish were prejudiced against black people?
A. At the time when we waived the jury, it's like he told me that honestly you don't want to stand against the jury because, you know, the hairit's a very prejudiced system, the hair and the teeth, you wouldn't stand a chance. And I was like, I
. . . .
Q. Y'all waived the jury?
A. Yes, sir.
Q. Did he talk to you at that time about these things?
A. No, he just told me what he was going to do and I wasI asked him if that was a good decision and he said yeah and I followed.
*166 The defendant also testified that his attorney forced him into entering the plea despite repeatedly telling his attorney he did not want to enter the plea because he was innocent. The defendant explained:
Q. And the only reason you pled was because of the pressure put on him by saying you was going to get thirty or forty years rather than ten years?
A. He told me if I have to go to trial I was going to lose and I was going to get twenty years and get shipped straight to Angola today, that same day, and I was prepared to go to trial, you know, and I told him I know I'm innocent. I know some kind of way you can prove my innocence.
Q. Alright, well, listen to this, up until that point in time, it was your understanding that you were going to trial?
A. I was going to trial.
Q. And at that moment when you got in the courtroom that's when he told you that you could not win and that you had to plead guilty?
A. The minute I got in there.
Q. Did you insist that you go to trial?
A. I insisted a lot of times. That's part of the reason why I recessed because I wouldn't make up my mind because he was trying to tell me his opinion and I'm saying I want to go to trial. So he's telling me, you know, don't be stupid and I'm like I really don't know what to do. I'm innocent and no one wanted to hear me.
Q. So are you saying this to the Court, that you not one time did you sit down and discuss the facts and circumstances of your arrest as pertaining to your guilt or innocence with Jason Robideaux who was hired to represent you? Not one time?
A. Not one time, sir. Not once.
The defendant further testified that on the day of trial he was in shock and pressured and he did not know what he said in court. The following exchange also occurred between the defendant and the assistant district attorney:
Q. The day that you pled guilty, you understood that if you went to trial and you were convicted, the least amount of time you would get sentenced to was twenty years?
A. Yes, sir.
Q. Okay, and you understood that if you chose not to go to trial and you pled guilty that the least you would get would be ten years instead of twenty?
A. No, sir.
Q. You didn't understand that?
A. No, sir.
Q. You didn't tell the judge you understood that?
A. I ain't had a chance. I mean, I was pressured. All he kept saying was wait for a new law and telling meI'm telling him let's go to trial. He's telling me you're going to get twenty and shipped to Angola. So I just sit hereI didn't even know what to say, you know.
Q. I asked you
A. I didn't understand that thing you was talking about because you were saying something about ten and then he said something about a new law and something about twenty. That's all I remember. That's all I remember.
Q. Okay, did you tell the judge that you understood what you were doing?
A. I never talked to the judge. I didn't know what conversationall I thought my lawyer was supposed to talk to the judge for me and he's telling me he can't do nothing so I'm sitting crying because I can't talk to nobody. I don't know how to go through that. I'm not a lawyer, sir.

*167 Q. You were sitting on the witness stand like you are now in that courtroom across the street. The judge asked you a lot of questions about whether or not you understood, right?
A. Sir, I barely remember. I know he was asking me some questions but I was in shock, sir. I was confused. I didn't know what to think, crying, talking to my mama, I was really confused. I don't remember what this law he was saying to me.
Q. Okay. So you don't remember anything that happened the day you pled guilty?
A. I remember whenever theywhenever I had to plead guilty and everything. I remember that, but I don't remember what was said and anything. All I remember he was telling me don't be stupid, sign here, sign there, you know. I looked at my mom like I don't know what to do, Mom. My lawyer don't even want to go to trial. I want to go to trial, You know, they keptthey pressured me like just follow what he says. And then after a while I'm like follow what he said? And I'm like, you know, I still don't understand what he told me. He told me he was coming back to me and talk to me, discussing the matter, and he never came back. He never came back. He never came back and talked. He said as soon as I get put in jail he was coming back and talk to me. He never came back talked [sic] to me.
When asked why he told the judge he understood the plea agreement, the defendant stated he was pressured. Further, the defendant testified, while he was being held in jail, he was informed him if he did not admit that the cocaine belonged to him his mother's home would be seized. The defendant asserted that at the time the guilty plea was entered he understood what guilty meant and that he was not going to trial.
The trial court denied the motion, providing an extensive review of the plea hearing and explaining:
THE COURT: ... The Court went through an extensive boykinization with this gentleman and I remember it really well. I am inclined to agree that initially he appeared reluctant to enter the plea. However, as we began, the information that I garnered from the transcript of the sentencing and the boykinization which will reflect this, I reviewed that yesterday evening and again this morning indicates that this young man had a high school education. He went to one year of college at what's now the University of Louisiana at Lafayette which I assume was University of Southwestern Louisiana at the time. He attended six months of T.H. Harris for non-destructive testing and six months at South Louisiana College. He's got education. I find him to beand today again I find him to be a reasonably intelligent young man, understands his surroundings. I find him to be savvy, aware of what's occurring. In the boykinization that I reviewed, I noted that initially I asked him if Jason Robideaux, at page fourteen, had been your attorney throughout this matter. Is that correct? His answer was, "Yes, sir." And incidentally, he was the only one being boykinized on that day. The only people in the courtroom were me, his family, my court staff, the prosecuting attorney, and the defense attorney. There was nothing to rush him, no moving along rapidly, none of this. He said, "Yes, sir." I said have you had the opportunity to discuss your case in general with Mr. Robideaux throughout this matter? His answer was, "Yes, sir." "You've particularly had the opportunity to discuss your decision today to withdraw *168 your not guilty pleas and enter a guilty plea to the amended bill of information being filed by the district attorney?" "Yes, sir." "Are you satisfied with Mr. Robideaux's services?" "Yes, sir." "You have any complaints about him at all?" "No, sir." "That being none, we will proceed." We got to the section where the gentleman, I informed him explicitly on at least two, probably three occasions, that if he pled guilty to the charge of possession of cocaine in excess of twenty-eight and less than two hundred grams he was looking at a minimum of ten years in prison, maximum of thirty years, possession with intent to distribute marijuana was the minimum of five years, maximum of thirty years and that the ten year sentence, ten to thirty, was a maximum mandatoryI mean mandatory sentence. I had no choice. I told him that three times. I asked him have you been promised anything, any leniency, or given to understand you would receive only a certain sentence other than the written plea of guilty form which in fact he signed and was made part of the record. I explained to him all the rights he had, every single one of them, I did it three times. His right to trial, his right against selfincrimination, the presumption of innocence, along with his appellate rights, his right to call witnesses, his right to cross examine witnesses, and he indicated to me that he understood. The Court's impression throughout was that he was reluctant because he didn't want the ten years. He didn't want to do any time. But he well understood his options because I stopped the boykinization at one point and I said I am not satisfied that this young man wishes to enter these pleas and I'm going to stop to discuss it with his lawyer. They left. He came back. I went through the boykinization that I normally do from the beginning. I started from the beginning and went through all the rights again. I asked him if he realized by pleading guilty he was in effect admitting or confessing that he's committed these crimes at page twenty-two of the transcript. He said, "Yes, sir." I went through the multiple offense habitual offender information with him. He said he understood all of that. I asked him what happened, what resulted in you being charged with these crimes. I wanted an allocution. The first thing he said was, "It wasn't in my possession." I said, "Okay. I don't know what to do any more but I'm not going to accept this plea. I refuse to accept it. I don't think it's voluntarily. I don't thinkhe doesn't want to plead. We are here to go to trial. We shall go to trial. An election was made that he have an opportunity to speak to his parents and his lawyer. When they returned, I was informed that while reluctant he understood his chances were better by entering a plea than taking his chances on the higher charges, the more difficult charges. We went through the boykinization process again. At page twenty-three I asked him, "They found some cocaine in your mother's home when you were arrested." "Yes, sir." "Whose cocaine was it?" "Sir, it was mine." My response, "I didn't hear you." "It was mine." "It was your cocaine and it was three hundred and fifteen grams of cocaine approximately?" "I don't know, sir" "You're going to have to speak just a little bit louder, Mr. Guilbeau." "I don't know, sir" "Did you have cocaine that was found and recorded by the district attorney's office?" "Honestly, Mr. Judge, I'm notthe cocainethe reason why I'm tripping on the cocaine it wasn't really mine. It was my brother's friend and it was in there so I took *169 the charge." Everybody knew at that point that he was making allegations. He had the benefit to discuss that with his lawyer. The Court has had the benefit of Mr. Robideaux's services in defending his clients throughout and I can tell you that I find him to be a good lawyer. They went back and discussed it once again. Mr. Robideaux then said that he was going to intercede as counsel. "Your Honor, I've heard this but under the legal definition of possession..." "I've heard this", he says, so he discussed that with his lawyer," ... but under the legal definitions of possession based upon the statements he made and the proximity of him to the drugs, and statements made by his parents, the district attorney can prove that he was in possession, whether it's direct or constructive of that cocaine. Now whether some other people also had claim to it, I'm not defending those other people. But there is a factual basis for this man to plead to that possession of cocaine charge, your Honor. And I've tried to explain to him that if other people also had a claim to it that doesn't exculpate him, your Honor. I went on then at page twenty-four to explain to Mr. Guilbeau, "This is called an allocution. What that means is you've got to tell me why you were arrested and what you did." Now this was after the discussion with Mr. Robideaux, Mr. Robideax's intercession. "Now, did you have possession of that crack cocaine at your mother's home when you were arrested?" "Yes, sir." "What else did they find when you were arrested that was at your mother's home?" "Marijuana." "How much marijuana?" "About four pounds." What I'm called upon to do is determine, and it's controlled by Article 599 of the Louisiana Code of Criminal Procedure 559, and this is discretionary with this Court. Basically what 559 states, the Court may permit a plea of guilty to be withdrawn at any time.... So the law extant on this has been in existence since time in memorial [sic]. It hasn't changed any. It's really very simple. I've got to make a determination. When this young man ultimately entered his plea did he do so voluntarily and intelligently? At the time I found that he did. He comes before me today and in the motion makes allegations relative to his attorney, makes allegations relative to the fact that he did not understand. He didn't know that it was ten years. He points the finger at his brother, perhaps another friend. It wasn't his dope, it was someone else's dope. That may be. I know that he had the opportunitywe were ready to go to trial. No one else was scheduled for trial. He waived his jury trial. We were prepared and he was informed. After an extensive boykinization he elected knowing all that was out there that he could make an election. I want to go to trial, I can go to trial. And I told him you can go to trial. We're going to have a trial. Then he said no, no, no, no, no. They went and discussed it and came back. Ultimately he pled guilty. He pled guilty to possession of twenty-eight grams and less than two hundred grams of cocaine and possession with intent to distribute marijuana, 4.75 pounds or thereabouts. I don't think that I am allowed to question the tactics, strategy, motives of Mr. Robideaux in not pursuing the motion to suppress after I certainly took pains at great length to explain to this young man what his rights were, if he understood them without any time restraints, any time pressures, and I find that his guilty plea was voluntary, knowing and intelligent and it was an election he made. He elected to take the sure sentence of ten to thirty years as opposed to rolling the dice on a trial of twenty to *170 sixty years. That's my finding at this time.
Having reviewed the plea hearing, we find it supportive of the trial court's reasoning in denying the motion to withdraw the guilty plea. Accordingly, we find no abuse of discretion in the trial court's determination to deny the motion. This assignment lacks merit.

DECREE
For the foregoing reasons, the defendant's convictions are affirmed. The defendant's sentence imposed by the trial court for the conviction under La.R.S. 40:967 is vacated and remanded for resentencing in accord with this opinion.
CONVICTIONS AFFIRMED. SENTENCE FOR POSSESSION OF COCAINE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] At the time of the commission of the offense, La.R.S. 40:967(F) provided:

F. Other penalties for possession. (1) Except as otherwise authorized in this Part:
(a) Any person who knowingly and intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than sixty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
[2] After amendment by Acts 2001, No. 403, § 4, La.R.S. 40:967(F), now provides:

F. Other penalties for possession.
(1) Except as otherwise authorized in this Part:
(a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
[3] The supreme court noted that, Acts 2001, No. 1163, which related to sentencing changes made to La.R.S. 14:98(E), third and fourth offense operating a vehicle while intoxicated, specifically stated that the penalty provisions were applicable "upon conviction." Furthermore, Act 1163 did not contain wording indicating that it would apply prospectively only.