MOORE, J.
 

 | diverious Holden appeals a judgment denying his motion to withdraw a guilty plea. We affirm.
 

 Factual Background
 

 Late in the evening of May 6, 2007, Winnfield Police received complaints of cars playing their stereos very loud, in violation of a city ordinance. Around 1:00
 
 *289
 
 AM on May 7, Officers Vines and Sheppard stopped a Ford Taurus on Moss Street for a violation of this ordinance. When officers asked the occupants to exit the vehicle, the passenger (Holden’s brother) immediately complied. However, the driver, Holden, did not; officers had to ask him three times. When Holden finally opened his door, Officer Vines saw a small bag containing suspected marijuana fall to the ground. As Officer Vines reached for the bag, Holden bolted and fled on foot; officers gave chase but could not apprehend him.
 

 A search of the Taurus uncovered, in addition to the bag on the ground, eight small bags of marijuana packaged for ready sale and some Xanax “bars” in a cigarette package. The passenger was arrested and gave a statement denying that he knew there were drugs in the car.
 

 Later that morning, Holden surrendered to Winnfleld police and made no statement. He was charged with possession of marijuana with intent to distribute, possession of Xanax with intent to distribute, flight from an officer and violation of the noise ordinance.
 

 Procedural History
 

 Holden initially pled not guilty and proceeded to jury trial before Judge Jim Wiley on August 28, 2007. However, during jury selection, |2Holden’s counsel announced that pursuant to plea negotiations with the state, Holden would plead guilty to the first count — possession of marijuana with intent to distribute — and the state would dismiss all other charges, including all charges against his brother. The prosecutor agreed, stating also that Holden’s probation from a 2002 conviction for possession of cocaine with intent to distribute would be revoked. Judge Wiley added that the state would not charge Holden as a habitual offender for this offense, but could use it to enhance any future sentences; defense counsel agreed. The court then
 
 Boykinized
 
 Holden, advising him
 
 inter alia
 
 that the sentence range was 5 to 30 years in prison and a $50,000 fine; in fact, the court repeated the 30-year maximum, and Holden replied that he understood. Finding a factual basis and a knowing and voluntary waiver of rights, Judge Wiley accepted the guilty plea. He also revoked Holden’s probation for the 2002 conviction and ordered that the 12-year sentence for that offense be executed.
 

 At sentencing on October 18, 2007, Holden’s wife and mother testified on his behalf that contrary to the presentence investigation report (“PSI”), Holden had been employed for about four months before this offense. The state recommended that Holden receive a minimum of 10 years; defense counsel countered that a minimum of five years would be sufficient. Judge Wiley recited a factual basis under La. C. Cr. P. art. 894.1, notably that this was Holden’s second conviction for possession of CDS with intent to distribute, and then sentenced him to 18 years at hard labor, consecutive to any other sentence he was serving. Defense counsel objected |sthat the sentence was excessive.
 

 On January 9, 2008, defense counsel filed a “motion to reconsider sentence and/or motion to withdraw guilty plea.” This alleged that during the plea negotiations, “the undersigned counsel asked this court what sentence it would impose if the defendant were to enter a guilty plea and was advised that the court would impose a sentence of 5 to 10 years’ incarceration if a presentence investigation report did not reveal any surprises.” He asked to withdraw his plea because the sentence imposed greatly exceeded what he agreed to when Holden entered it. Judge Wiley set a hearing for February 21 and continued the matter on that date.
 

 
 *290
 
 By the time the hearing was held, March 27, 2008, Judge Wiley had retired; Judge Ronald Lewellyan presided
 
 pro tem.
 
 At the hearing, the prosecutor stated that Holden had pled guilty, but when the PSI showed he was already on probation for a drug offense, Judge Wiley sentenced him to 18 years. Defense counsel argued:
 

 [D]uring the course of picking a jury we had conference with the judge in which we discussed plea negotiations. In that plea negotiations [sic] and I think Mr. Crews’ [the prosecutor] and my recollection might be somewhat different on this, but we still kind of agreed that — that the judge said sentence would be somewhere around 10 years. On this matter my client accepted [the] plea. It is my recollection that he said five to 10 years in prison. They said he said 10. I conveyed information to my client and based upon information I conveyed to him, he accepted the plea agreement that — that was offered to him.
 

 Counsel conceded that Judge Wiley indicated the sentence would depend on finding “no surprises” in the PSI, but in fact “there were no surprises,” because “we all knew about, you know, probably” the prior conviction from the outset.
 

 14Judge Lewellyan interrupted counsel, stating that the argument was sufficient. He denied the motion to withdraw the guilty plea, but granted the motion to reconsider and amended the sentence to 12 years at hard labor. Counsel neither objected nor filed an appeal.
 

 Over a year later, March 31, 2009, Holden filed a uniform application for post conviction relief, urging that counsel was ineffective for failing to appeal. In his
 
 pro se
 
 memorandum, Holden asserted that he “agreed to except [sic] an offer to plead guilty to attempted [sic] possession with intent to distribute marijuana with the sentencing range being between five to ten years max” subject to “no surprises” in the PSI. The district court, through Judge Jacque Derr, denied the application, noting that in pleading guilty, Holden had specifically waived the right of appeal.
 

 Holden sought a supervisory writ; a panel of this court found that because the transcript did not disclose a specific sentencing agreement at the time of the plea, Holden was entitled to seek review of his sentence under
 
 State v. Adger,
 
 35,414 (La. App. 2 Cir. 12/5/01), 803 So.2d 304.
 
 State v. Holden,
 
 44,894 (La.App. 2 Cir. 8/6/09),
 
 unpublished wrrit grant.
 

 At a hearing on October 22, 2009, Judge Derr granted Holden an out-of-time appeal, stating:
 

 Okay. Court has reviewed the record of the * -* * various guilty pleas and the record is just really not clear as to how the 12-year sentence came to be. The 18-year sentence was clearly not what was agreed to * * * when he entered his plea initially. There are serious questions as to exactly how the 12-year plea came about and I am going to allow Mr. Holden to have his day in court.
 

 | ¡¡In his out-of-time appeal, Holden urges only that the district court erred in denying his motion to withdraw the guilty plea. Through counsel and
 
 pro se,
 
 Holden contends that his plea was predicated on a breached plea bargain agreement, and thus not voluntarily and intelligently entered; due process requires allowing him to withdraw it. He concedes that a mere misunderstanding would not vitiate the plea, but argues that this plea was not free and voluntary because it was entered in the belief that his sentence exposure would be 5 to 10 years, an assertion never denied by the state. Holden seeks leave of court to withdraw his plea, or alternatively an evidentiary hearing.
 

 
 *291
 
 The state responds that the appeal concerns only an excessive sentence, as this court already ruled that there was no plea agreement setting out a particular sentence. Further, the record does not support the claim that Judge Wiley would have imposed only 5 to 10 years: the
 
 Boykin
 
 colloquy repeatedly referred to 5 to 30 years; Holden stated on the record there were no promises made in exchange for his plea; at sentencing, when the prosecutor asked for a 10-year minimum, Holden did not object or refer to the alleged plea agreement. The state suggests that even defense counsel expected a sentence of “somewhere around” 10 years; the sentence of 12 years was consistent with this understanding and no abuse of discretion.
 

 Discussion
 

 A plea bargain agreement is considered to be a contract between the state and the criminal defendant.
 
 State v. Nall,
 
 379 So.2d 731 (La.1980);
 
 State v. Cheatham,
 
 44,247 (La.App. 2 Cir. 5/13/09), 12 So.3d 1047, and |ficitations therein. If the state is a party to a plea bargain agreement, the bargain must be enforced.
 
 Santobello v. New York,
 
 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971);
 
 State v. Cheatham, supra.
 
 The party demanding performance of a plea bargain agreement has the burden of proving its existence.
 
 State v. Givens,
 
 99-3518 (La.1/17/01), 776 So.2d 443;
 
 State v. Bosworth,
 
 451 So.2d 1070 (La.1984);
 
 State v. Phillips,
 
 09-455 (La.App. 5 Cir. 3/9/10), 39 So.3d 610. Under substantive criminal law, there are two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the guilty plea.
 
 State
 
 v.
 
 Givens, supra; State v. Phillips, supra.
 

 We have closely reviewed the instant record and find that it does not support that contention that the plea bargain agreement included a sentence range of 5 to 10 years. No one mentioned a sentence range when the parties announced the plea bargain on the record. Judge Wiley meticulously
 
 Boykinized
 
 Holden, advising him at least three times that the sentence range was the statutory 5 to 30 years; no one corrected the judge. Holden agreed that aside from the promise to dismiss all other charges (including charges against his brother) and to file no habitual offender bill, the state made no other promises to induce the plea. Two months later, at sentencing, the prosecutor asked the court for a minimum 10-year sentence; no one objected that under the plea agreement, 10 years was actually the
 
 maximum
 
 allowed. When Judge Wiley imposed the sentence of 18 years, defense counsel objected to its excessiveness, not to the breach of any plea bargain.
 

 |7The alleged sentence range first appeared three months later, in Holden’s “motion to reconsider sentence and/or withdraw guilty plea,” in which defense counsel alleged that he, the prosecutor and the court agreed to a 5-to-10 limit. At the hearing before Judge Lewellyan, however, counsel was considerably less adamant, conceding that the prosecutor’s recollection might be “somewhat different,” and that they “kind of agreed that * * * sentence would be somewhere around 10 years.” The prosecutor never admitted there was any sentence range.
 

 Of course, Holden has maintained, in his application for PCR and his
 
 pro se
 
 brief to this court, that he agreed to and relied on the sentence range before entering his guilty plea, but he has not shown that he was involved in the discussions between defense counsel and the prosecutor. His allegations do not support a mutual agreement with the state.
 

 On this evidence, the district court was entitled to find insufficient proof that the plea agreement included a sentence range.
 
 *292
 
 Moreover, even if the court were to accept defense counsel’s admission that the agreement was “somewhere around 10 years,” the 12-year sentence ultimately imposed would not be a breach of that agreement. The district court did not err in denying the motion to withdraw sentence.
 

 Conclusion
 

 On error patent review, we note that although the offense of conviction, La. R.S. 40:966 B(3), carries a mandatory fíne of not more than $50,000, the district court imposed no fíne. Because the state did not object and because the illegally lenient sentence does not prejudice Holden, we | ^decline to amend the sentence or remand for resentencing.
 
 State v. Griffin,
 
 41,946 (La.App. 2 Cir. 5/2/07), 956 So.2d 199, and citations therein. We find nothing else we consider to be error patent.
 

 The judgment denying the motion to withdraw guilty plea is affirmed; the conviction and sentence are also affirmed.
 

 AFFIRMED.