MOORE, J.
|, Jackie Waffer appeals his adjudication as a fourth felony offender and life sentences without benefits on two drug convictions. Waffer contends that he initially pled guilty to the underlying offenses with the state’s agreement not to pursue habitual offender charges; however, when he later sought post conviction release, the state and court coerced him into accepting unduly burdensome conditions of release which enabled the state to file habitual offender charges in the event of a violation. Finding no merit in Waffer’s arguments, we affirm.

The Underlying Offenses

In late 2002, the Monroe Metro Narcotics Unit got leads that Waffer was receiving from Houston regular shipments of large quantities of marijuana and cocaine which he distributed to low-level dealers for street sales. In February 2003, officers made a controlled buy from one of Waffer’s alleged sellers, Lori Harris, at her house on Filhiol Ave., and obtained a warrant for her arrest. On February 18, when they executed the warrant, they found over 12 ounces of marijuana in four separate bags and 42 grams of cocaine in 13 separate bags in the house. She admitted to officers that Waffer had periodically brought her varying amounts of drugs to “store” there. She then made a recorded cell phone call to Waffer, who said he was “missing some of that white stuff,” and she agreed to bring it to his rental house on nearby Cole Ave. Officers arrested him when he arrived for this rendezvous.
At the time of his arrest, Waffer was on supervised release from federal authorities for a conviction for conspiracy to possess with intent to | ^distribute 100 kilograms or more (over 220 pounds) of marijuana, 21 U.S.C. §§ 841(a)(1), 846. Because of the instant arrest, his release was revoked and he had to serve an additional 30 months in the federal penitentiary.
In April 2003, the state formally charged Waffer with one count of possession of marijuana with intent to distribute, La. R.S. 40:966, and one count of possession of over 28 grams of cocaine with intent to distribute, La. R.S. 40:967 F(l)(a). The case was continued while Waffer served the balance of his federal time. In addition to the federal felony, Waffer had two state felony convictions, a 1998 guilty plea to simple burglary and a 1994 guilty plea to being a convicted felon in possession of a firearm.
*535 Trial was set for January 31, 2005. On that date, Waffer’s attorney, George Brit-ton, and the state announced they had reached a plea agreement whereby Waffer would plead guilty as charged to both counts and the state would not file a habitual offender bill. After questioning Waf-fer, the court accepted the guilty plea, ordered a PSI and set a sentencing date. The court revoked any bail that was previously set and denied a new request for bail. After these proceedings, Waffer was returned to the federal penitentiary; he was released on April 24, 2005.
In the meantime, Waffer retained another attorney, Charles D. Jones, to represent him at sentencing and help him secure release on bail pending sentence. The court did not, however, allow Mr. Britton to withdraw as counsel of record.
Is The Order of Release
After his release from federal custody, Waffer was transferred to the Ouachita Correctional Center on detainers from the sheriffs office. On April 29, 2005, Mr. Jones contacted the court directly in an effort to have Waffer released on bail prior to sentence. The prosecutor was called to the judge’s chambers to avoid any ex parte communications. In off-the-record negotiations, Mr. Jones, the prosecutor and the judge agreed that Waffer would be released on bail pending sentence so he could “take care of some very important personal business.” After this meeting, Mr. Jones prepared an order of release setting forth the negotiated terms:
“I. Defendant must post a surety bond in the amount of $50,000.00;
“II. Defendant must state in open court where he will reside upon release from jail and must provide a telephone number where he can be reached;
“III. Defendant must agree to a curfew from dark to daylight;
“IV. Defendant must agree to daily monitoring by the 4th Judicial District’s Probation office;
“V. Defendant must submit to random drug testing; and
“VI. Any plea agreement, including but not limited to any agreement regarding the habitual offender act, is violated if defendant breaches any condition of his release contained herein or fails to appear in court.”
At the hearing on May 2, the parties stated their positions for the record. The court advised Waffer that negotiations were held on his behalf to get him released on bail, but there would be conditions of release. The court read and explained each condition to Waffer, and he agreed on the record. The prosecutor stated, however, that the final condition did not 14clearly state their agreement; after some discussion, the court added the handwritten notation in italics:
“VI. Any plea agreement, including but not limited to any agreement regarding the habitual offender act, is violated if defendant breaches any condition of his release contained herein or fails to appear in court or violates any law.”
The court advised Waffer of the final condition: “Actually, you don’t even have to commit another crime — you can engage in some bad behavior and I might try to do something about it.” Waffer stated that he agreed. He posted bail and was released. His sentencing date was reset monthly for the rest of 2005.

The Revocation

On January 17, 2006, Ouachita Parish Sheriffs deputies investigating a double homicide obtained a search warrant for a two-story townhouse on Colonial Drive in Monroe. Deputies and police officers sur *536 rounded the building before a SWAT team entered. Shortly after entry was made, deputies stationed behind the townhouse saw a man trying to climb out of an upstairs rear window. Deputies ordered him back into the townhouse and learned that he was Jackie Waffer. The search turned up approximately one ounce of powder cocaine, cut into small portions for ready sale, some loose marijuana and several weighing scales. . The other two people present in the townhouse told deputies that the drugs belonged to Waffer.
According to the state, deputies did not immediately arrest Waffer because they thought he could provide information about the homicides; however, he absconded and failed to provide the information, so an arrest warrant was issued. Waffer was then arrested on charges of possession of |smarijuana and cocaine, both with intent to distribute. On January 25, the state moved to revoke Waffer’s bail.
Waffer appeared for sentence on the underlying offenses on March 24, 2006. Based on its review of the PSI, the court described Waffer as a “drug dealer, not in the sense of an individual * * * out there selling one or two rocks for $20, $40 a pop, but somebody who is supplying and agreed to supply and was eager to supply a large quantity of drugs to various and different individuals here in Ouachita Parish.” Without mentioning the incident of just two months earlier, the court sentenced Waffer to concurrent terms of 8 and 12 years at hard labor and fines of $10,000 and $25,000.
After sentence was imposed, Mr. Jones advised the court that Waffer had been appointed an indigent defender, Douglas Walker, as counsel for the January 2006 charges. The prosecutor replied that the state had not yet decided whether to multiple bill Waffer on the underlying offenses or wait and do so on the January 2006 offenses. Mr. Jones neither objected nor asked the court to withdraw the guilty plea.
On April 5, the state filed a motion to determine a breach of release agreement. This alleged that on January 17, Waffer was not living at the address he provided to the court and was arrested for possession of cocaine with intent to distribute and other drug offenses. The state alleged that because Waffer breached the order of release, it wished to proceed with a habitual offender bill. The attached bill of information charged him as a fourth felony offender.
| fiThe matter proceeded to a hearing held over two days in November 2006 and January 2007. On the first day, the state offered that if Waffer would plead guilty as a second felony offender, the state would agree to a sentence of 25 years and file no other habitual offender charges; Waffer refused. At the close of evidence, the court found that Waffer had violated various provisions of his order of release, and granted the state leave of court to file the habitual offender bill.
At a hearing on September 18, 2007, the state offered Waffer a 30-year sentence if he would plead guilty as a second felony offender; Waffer declined. After receiving evidence, the court found that Waffer was a fourth felony offender. The court vacated the prior sentences of 12 and 8 years and sentenced him to mandatory life at hard labor without benefits. Three days later, the court clarified that the sentence was actually two concurrent life sentences. In July 2009, the court granted an out-of-time appeal, which has been filed by the Louisiana Appellate Project.

Discussion: Breach of Plea Agreement

By his first two assignments of error, Waffer urges that the state breached its plea agreement. He asserts that he *537 agreed to plead guilty as charged only because the state promised not to charge him as a habitual offender. By his first assignment he urges that his plea was coerced by the promise of presentence release, making it involuntary and unenforceable. By his second assignment, he argues that he never agreed to the order of release which purported to modify the original agreement. He contends on appeal, as he did in the district court, that he never clearly appreciated and 17understood that the order of release would subject him to a habitual offender bill if he violated a term of release. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).
The state responds that Waffer bargained for, and received, a modification of his plea agreement so he could be released from jail pending sentence.
A plea bargain is considered to be a contract between the state and the criminal defendant. State v. Nall, 379 So.2d 731 (La.1980); State v. Cheatham, 44,247 (La.App. 2 Cir. 5/13/09), 12 So.3d 1047, and citations therein. If the state is a party to a plea bargain agreement, the bargain must be enforced. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Cheatham, supra. Under substantive criminal law, there are two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the guilty plea. State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443; State v. Holden, 45,367 (La.App. 2 Cir. 6/23/10), 44 So.3d 288.
Bail after conviction is regulated by La. C. Cr. P. art. 332 B, which provides (with emphasis added):
After conviction and before sentence, bail shall be allowed if the maximum sentence which may be imposed is imprisonment for five years or less. Bail may be allowed pending sentence if the maximum sentence which may be imposed is imprisonment exceeding five years, except when the court has reason to believe, based on competent evidence, that the release of the person convicted will pose a danger to any other person or the community, or that there is a substantial risk that the person convicted might flee.
IsThe permissive may, together with the duty to assess the risk to the community, obviously gives the district court discretion to impose special conditions on release after conviction and before sentence. We are not persuaded by Waf-fer’s argument that “the purpose of bail is not to protect the public from all harms that the prisoner may inflict upon his release” but only to “ensure that the accused will appear at trial,” ergo conditions of release are illegal. This quoted passage appears in Hebert v. Layrisson, 2002-0361 (La.App. 1 Cir. 5/9/03), 849 So.2d 643, writ denied, 2003-1591 (La.10/3/03), 855 So.2d 318. Hebert was a civil case in which the plaintiffs sued the sheriff of Tangipahoa Parish for personal injuries resulting from a battery inflicted by an arrestee whom the sheriff had released on a personal recognizance bond. The court of appeal’s discussion affirming the exception of no cause of action addressed only the limits of civil liability. It did not cite Art. 332 and did not hold that conditions of criminal release are illegal.
The instant record comes nowhere near supporting Waffer’s claims that his guilty plea was coerced by the illusory promise of presentence release or that the conditions of that release were never clearly explained to him. After pleading guilty and while awaiting sentence, Waffer retained Charles Jones to represent him at sentencing and to secure bail pending sentence. On Waffer’s behalf, Mr. Jones contacted *538 the court and initiated negotiations with the court and prosecutor for his release. On Waffer’s behalf, Mr. Jones drafted the release order which included the proviso that “any agreement regarding the habitual offender act, is violated if defendant | flbreaches any condition of his release[.]” It is abundantly clear that the state was not the party that dangled the promise of presentence release in front of Waffer, as the dissenters in Ricketts v. Adamson, supra, interpreted the facts of that case. To the contrary, it was Waffer, acting through counsel, who broached the subject, skillfully negotiated with the court and the state, and obtained a very valuable concession. There is absolutely no merit to the contention that the state or the court coerced Waffer into accepting the order of release and thereby negated his consent.
The record contains even less support, if such is possible, for Waffer’s disingenuous argument that he was “never asked to agree to it [the order of release] nor informed that he could refuse without staying in jail.” At the hearing on May 2, 2005, Waffer agreed to each and every condition of his order of release. The following colloquy is representative:
The CouRT: All right. Let me tell you what he just said in case you don’t understand it. You had an agreement with the state and as a condition of your release you would have to agree here in open court to release the state from its obligation to forgo any habitual offender adjudication if you violate any conditions, any other conditions of your release. Do you understand that?
By Mr. WaffeR: Yes, sir.
By the Court: And do you agree to release the state from its obligation previously entered into if you violate any conditions of your release?
By Mr. Waffer.- Yes, sir. I have one question?
By the Court: What’s the question?
By Mr. Waffer: That’s including like traffic tickets and things like that?
LoBy the Court: I mean, I’ll be reasonable about it. * * * I don’t have any desire to see you trip up, Mr. Waffer, I just want to make sure you don’t cause any problems for anybody while you’re out. Look, minor traffic offenses don’t count. Actually, you don’t even have to commit another crime — you can engage in some bad behavior and I might try to do something about it.
It is hard to imagine a more direct and accurate apprisal of rights, and showing of comprehension, than this record contains. Presentence release is available at the court’s discretion. La. C. Cr. P. art. 382 B. Waffer sought such release, obtained it, and agreed to each condition that modified his original guilty plea. These assignments of error lack merit.

Impermissible Judicial Participation in Plea

By his third assignment of error, Waffer urges the court had no authority to amend the plea agreement and should have enforced its provisions. Specifically, he contends the court “erroneously participated in suggesting guilty pleas to the accused by highlighting the progress of the state’s arguments and suggesting the different considerations involved.” He argues that the court twice misstated the burden of proof; this, he contends, amounted to “cajoling and encouraging acceptance of a state offer” in violation of due process. In support he cites Frank v. Blackburn, 646 F.2d 873 (5 Cir.1980), Toler v. Wyrick, 563 F.2d 372 (8 Cir.1977), cert. denied, 435 U.S. 907, 98 S.Ct. 1455, 55 L.Ed.2d 498 (1978), and older federal district court cases.
The state responds that on the two occasions cited, it had offered Waffer a specific *539 sentence with no habitual offender bill in exchange for a guilty plea, and the court advised him of the strength of the state’s case; however, Waffer was represented by counsel and refused both offers, so |1Tthere was no undue judicial participation.
The effect of a trial judge’s participation in the proceedings on the free and voluntary nature of a defendant’s plea was discussed at length in State v. Bouie, 2000-2934 (La.5/14/02), 817 So.2d 48. In Bouie, the supreme court declined to adopt a rule absolutely prohibiting Louisiana judges from participating in plea negotiations, such as F.R. Cr. P. 11(e)(1), but cautioned that a judge doing so “should take extreme care to avoid the dangers described in the ABA commentary,” which it quoted as follows:
(1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. ABA Standards, Pleas of Guilty § 3.3(a), Commentary 73 (approved draft 1968).
At the outset, we note that state court judges are not held to the bright-line rule of Federal Rule 11. State v. Bouie, supra; DeVille v. Whitley, 21 F.3d 654 (5 Cir.1994), cert. denied, 513 U.S. 968, 115 S.Ct. 436, 130 L.Ed.2d 348 (1994); Frank v. Blackburn, supra. Waffer’s invocation of the bright-line rule is therefore unpersuasive.
Waffer correctly shows that on one occasion, the court stated that the burden of proving that the defendant is a habitual offender “is less than beyond a reasonable doubt,” contrary to the general burden of proof beyond a reasonable doubt stated in La. R.S. 15:529.1 D(l)(b). State v. Henry, 42,417 (La.App. 2 Cir. 9/19/07), 966 So.2d 692, writ denied, 2007-2227 (La.8/29/08), 989 So.2d 95.
Viewing the record as a whole, however, we find absolutely no support for the claim that the judge impermissibly participated in the guilty plea process. The court was obviously uninvolved in the initial plea bargain on January 31, 2005, and as noted earlier it was Waffer’s counsel who actively engaged the court in the negotiations that led to the order of release on May 2, 2005. At the hearing on the motion to determine breach of release, November 17, 2006, the court stated that Waffer perhaps did not fully understand how his new charges affected the plea agreement:
By the Court: No, no. Let me tell you this. * * * You have an incomplete understanding of what’s going on. Let’s take this new offense out of it for the time being. You’ve already been convicted. You pled guilty, [and] part of the deal you had with the state when you pled guilty, and it seems like it was a long time ago, was that the state would not try to have you sentenced as a habitual offender. In other words, you know, the state routinely uses that as a tool to, you know, to move their document along.
By Mr. Waffer: I understand.
[[Image here]]
By the Court: Let me finish telling you where you are. I want you to talk to your lawyer. But, listen, I want you to understand completely. Mr. Aycock [the prosecutor] is saying, “Judge, * ⅝ * *540 we want you to make a judicial determination that he violated the terms of his release and thereby we’re no longer bound by our original agreement * * * not to seek to have him sentenced as a habitual offender.” * * * So, once we finish this hearing I’ll either say, ‘Yes, the state is bound by that original restriction” or “No, the state is not bound by it,” and then it will be up to the D.A. to decide what to do next.
Here and elsewhere the court carefully and indulgently explained to Waffer that he would have great sentencing exposure if the court found a [ ^breach of the order of release. We find nothing to indicate that the judge lacked objectivity or implied that Waffer would not receive a fair trial. Moreover, Waffer had the presence of both Mr. Britton and Mr. Walker, and refused the state’s offer of 25 years if he pled guilty as a second felony offender; the judge’s conduct obviously did not influence him. Right before sentencing on September 18, 2007, the state offered him 30 years if he pled guilty as a second felony offender; represented by the same two counsel, Waffer again declined. Simply put, we cannot find any evidence that the district court impermissibly participated in any of Waffer’s plea bargain negotiations. We also cannot find any evidence that the court’s statements unduly influenced him to accept a guilty plea, let alone an unfavorable one. This assignment lacks merit.

Waiver of Habitual Offender Bill

By his fourth assignment of error, Waf-fer urges the court had no authority to amend the plea agreement after sentencing. He argues that when he was sentenced pursuant to the original plea agreement on March 24, 2006, the state already knew about the events of January 17, 2006, but failed to assert them; this constituted a waiver of the right to assert them later. He concludes that the state “waited too long” in this case.
The state responds that the record refutes Waffer’s argumeijit that the state waived its right to file the habitual offender bill. It concludes that once he violated the order of release, it could proceed.
Immediately after sentencing on March 24, 2006, Mr. Jones told 'the court, “Unless Mr. Aycock can tell us on behalf of the state, now, Mr. 114Waffer is facing 12 years in prison, whether or not the state intends to-what the state intends to do.” The prosecutor replied that he intended to “do it promptly,” meaning he would decide whether to go forward with the habitual offender on these charges or on the new ones. Neither Mr. Jones nor Mr. Britton, both of whom were present, objected. Notably, Waffer and his counsel were surely aware that his arrest in connection with the events of January 2006 likely constituted a breach of the order of release, yet he proceeded to sentence without moving to withdraw his guilty plea as he might have done under La. C. Cr. P. art. 559 A. Finally, the order of release contains no provision that the parties’ obligations terminated upon sentencing. This assignment of error lacks merit.

Conclusion

We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, we affirm Jackie Waf-fer’s convictions, adjudication as a fourth felony offender, and life sentences.
AFFIRMED.